CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/5/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| HERMAN TRACY EVANS, *Plaintiff*, v. THE CITY OF LYNCHBURG, *et al.*, *Defendants.* | CASE NO. 6:24-cv-00019 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

    Plaintiff Herman Tracy Evans ("Evans") filed a complaint asserting claims under 42 U.S.C. § 1983 for excessive force as well as common law civil claims for assault, battery, and gross negligence.[1] Dkt. 1 ("Complaint"). Defendants the City of Lynchburg (the "City") and Lynchburg Police Department ("LPD") Officers Seth Reed ("Reed") and Jacob Williams ("Williams") move to dismiss the Complaint pursuant to Rule 12(b)(6). Dkt. 7, 8. The individual Defendants also raise qualified immunity defenses.[2] For the reasons set forth below, the motions will be denied in part and granted in part in an accompanying order.

## Standard of Review

    A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint and does not resolve contests surrounding the facts, the merits, or the applicability of defenses. *See, e.g., ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016).* In ruling on a motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences

---

[1] Plaintiffs withdrew their claim for intentional infliction of emotional distress at oral argument.
[2] Defendants withdrew their statute of limitations defense at oral argument, at least at this stage of the proceedings.

in the plaintiff's favor. *King,* 825 F.3d at 212.

## Background

Evans seeks to recover damages arising from injuries sustained during his apprehension and arrest on or about April 3, 2022. *See* Dkt. 1.[3] On that day, Reed received a dispatch call for a "disorderly" at "an address" in Lynchburg.[4] *Id.* ¶ 10. Reed arrived at Evans' home with his police dog, Knox *Id.* ¶ 10. Evans stepped outside onto his porch, and let Reed know that he was fine. *Id.* ¶ 11. Reed instructed Evans to remain in the house or he would be arrested. *Id.* ¶ 12. Using profanity, Evans told Reed to leave the property. *Id.* ¶ 13. Additional officers arrived, including Williams. *Id.* ¶ 14. Reed told Evans he would go to jail if he came outside again, and he proceeded to get Knox out of the police vehicle. *Id.* ¶ 15. Evans yelled "fuck you" to Reed, and Reed told Evans he was under arrest as Evans closed his front door. *Id.* ¶ 16. Reed warned Evans that if he did not come out, "I'm going to have to do what I have to do," and Evans refused to come outside. *Id.* ¶ 17. Reed gave a final instruction to open the door and step outside for questioning, but Evans refused, so Reed kicked the door in and commanded Knox to attack. *Id.* ¶ 18.

Reed and Williams entered the house behind the dog which lunged at Evans, biting into his upper right thigh and buttocks, causing puncture wounds, deep lacerations, and excruciating pain. *Id.* ¶¶ 19-20. Knox then latched onto Evans' top left thigh, and Reed began punching Evans on the side of the head and right ear, knocking him unconscious. *Id.* ¶¶ 21-22. While Evans was unconscious, Knox continued to bite and damage Evans' arm. *Id.* ¶ 23. Evans was transported to the hospital and was in a coma for two days. *Id.* ¶ 24. The medical staff stated that the Officers

---

[3] As the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor on a Motion to Dismiss, the following facts are drawn from Evans' Complaint. *See King v. Rubenstein,* 825 F.3d 206, 212 (4th Cir. 2016).
[4] Whether Reed had a warrant is unclear from the Complaint.

described Evans as being in a "methed-up, coked-up rage;" but the toxicology report indicated that neither substance was in Evans' system. *Id.*

Later, Evans was arrested on two felony warrants and a misdemeanor warrant. *Id.* ¶ 35. He was charged with killing/maliciously injuring a police animal; resisting arrest, disorderly conduct, and cruelty to an animal. *Id.* ¶ 36. He was found guilty on all charges except killing/maliciously injuring a police animal. *Id.* ¶ 36 n.2.

Defendants move to dismiss Evans' Complaint arising from his injuries and alleged violations of his Fourth Amendment rights. They argue that: (1) Evans has abandoned his municipal liability claims against the City by failing to respond to arguments raised in the Motion to Dismiss, and if not waived, the facts alleged are insufficient to support claims against the City; (2) Evans has failed to state claims for excessive force, failure to intervene, conspiracy, assault and battery, and gross negligence against the Officers because they acted lawfully and in an objectively reasonable manner under the circumstances; (3) even if the Officers crossed constitutional boundaries, they are entitled to qualified immunity.

## Discussion

### I. Evans has Abandoned his Claims Against the City of Lynchburg.

Municipal corporations such as the City are not vicariously liable under 42 U.S.C. § 1983 for the actions of employees under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, liability attaches to the municipality directly only in cases where the municipality causes the deprivation of rights "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). Evans' Complaint contains four *Monell* claims against

3

the City: Unconstitutional Custom or Practice (Count 4), Failure to Train (Count 5), Failure to Discipline (Count 6), and Ratification (Count 7).

The City moved to dismiss all four claims with supporting legal arguments. Dkt. 7, 8. Evans failed to respond to any of these arguments in his opposition brief. Dkt. 15. Defendants contend that Evans' failure to address the City's arguments regarding the *Monell* claims results in a waiver of those claims. Dkt. 16. Plaintiffs did not request leave to respond to the City's waiver argument.

Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims. *See, e.g. Grayson O Co. v. Agadir Int'l LLC,* 856 F.3d 307, 316 (4th Cir. 2017); *Stevenson v. City of Seat Pleasant,* 743 F.3d 411, 416 (4th Cir. 2014); *Harlow v. Wells Fargo & Co.,* 608 F. Supp. 3d 377, 387 (W.D. Va. 2022); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Sawyers v. UPS*, No. 2019 U.S. Dist. LEXIS 154571, 2019 WL 4305771 (M.D. N.C. 2019); *Fravel v. Ford Motor Co.,* 973 F. Supp. 2d 651, 654 (W.D. Va. 2013); *Eary v. Anderson Equip. Co.*, 2021 U.S. Dist. LEXIS 90235, 2021 WL 1910040, *2 (S.D. W.Va. May 12, 2021)). Because Evans posited no argument in response to the City's Motion to Dismiss Counts 4, 5, 6 and 7, he has abandoned those claims and they will be dismissed.

II. **Counts against the Officers**

A. **Count One: Evans Sufficiently Alleges a § 1983 Excessive Force Violation against Reed, and Reed is not Entitled to Qualified Immunity at this Stage of the Litigation.**

   i. *Excessive Force*

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172,

179 (4th Cir. 2018). "All claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 389 (1989).

The test set forth in *Graham* examines whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.[5] *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). An officer's observations are highly relevant, but his subjective beliefs are not. *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 607 (E.D.N.C. 2009). *Graham* directs a court evaluating an excessive force claim to consider (1) the severity of the crime at issue, (2) whether the suspect poses a threat to the safety of the officers or others, and (3) whether the suspect is resisting arrest or attempting to flee arrest. *Dolgos*, 884 F.3d at 179 (citing *Graham*, 490 U.S. at 397); *Bellotte v. Edwards*, 629 F.3d 415, 425 (4th Cir. 2011). The test considers whether the totality of the circumstances justifies the force used during the seizure. *Jones v. Buchanan*, 325 F.3d 520, 527-28 (4th Cir. 2003). A court must also consider that officers often make "split second judgements – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397; *Jones*, 325 F.3d at 527.

In Count One, Evans alleges that Reed, acting under color of state law, physically restrained him by ordering and allowing his police dog to attack, bite, and maul Evans' upper thigh, right elbow, right triceps, and right thumb multiple times even though Evans was unarmed, not resisting arrest, not fleeing law enforcement, and did not otherwise pose a danger to himself

---

[5] An officer's "failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 179 (4th Cir. 1998) (quoting *Kopf v. Wing*, 942 F.2d 265, 266 (4th Cir. 1991)). Whether Reed gave a warning before releasing the police dog is unclear.

or others. Dkt. 1 ¶ 54. Additionally, Evans alleges that Reed beat him, knocking him unconscious, and that Reed's actions had no conceivable justification or purpose. *Id.*

Taking Evans' allegations as true and drawing all reasonable inferences in his favor as the Court must do on a motion to dismiss, the first *Graham* factor, the severity of the crime at issue, weighs in Evans' favor. Evans alleges that Reed received a dispatch call for a "disorderly" which led Reed and his canine to Evans's home. Dkt. 1 ¶¶ 10-11. He further alleges that he "was thought to have committed a misdemeanor." *Id.* ¶ 54. While precise circumstances of the suspected misdemeanor are not detailed, taking all reasonable inferences as true, the allegations do not establish that Evans committed or was suspected of committing any violent or other serious crime. Therefore, the first *Graham* factor weighs in Evans' favor. *See Smith v. Ray,* 781 F. 3d 95, 102 (4th Cir. 2015) (finding that first *Graham* factor weighs in favor of plaintiff because nonviolent misdemeanor offense not the type that would give an officer any reason to believe that plaintiff was a potentially dangerous individual); *M.Y.M. v. Chavis*, 582 F. Supp. 3d 323, 334 (E.D. Va. 2022) (noting that nothing about the commission of misdemeanors indicates a threat to officer's safety).

The second *Graham* factor, whether the suspect poses a threat to the safety of the officers or others, also favors Evans. Evans alleges that he was unarmed, not resisting arrest, not fleeing law enforcement and that he did not otherwise pose a danger to himself or others. Dkt. 1 ¶ 54. Officer Reed counters that Evans had shown himself to be highly profane, defiant, and possibly dangerous. Dkt. 8 p. 8. Defendant's points are unpersuasive at this point in the proceedings. Although further findings of facts may support a different conclusion, the allegations in the Complaint, which the Court must assume as true, support a finding that Evans did not present a threat to the officers' or the public's safety that would warrant a beating and deployment of a

police dog.

Lastly, the third *Graham* factor asks whether Evans was "resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 397. Evans alleges that Reed instructed him to remain in the house so that he would not get arrested and that if he came outside again, he would go to jail. Dkt. 1 ¶¶ 12, 15. As instructed, Evans was inside his home and was unarmed. *Id.* ¶ 17. The allegations in the Complaint support a finding that Evans was not resisting arrest or attempting to evade arrest. Accordingly, the third *Graham* factor weighs in Evans' favor.

Considering these allegations and supporting facts in the light most favorable to Evans, an analysis of the *Graham* factors indicates that Evans has demonstrated a plausible claim of excessive force against Reed.[6]

However, Evans does not allege any facts that would support a claim for excessive force or even negligence against Williams. As to Williams, Evans contends that Williams entered the house behind the dog and had a duty to prevent the use of excessive force. *Id.* ¶¶ 19, 34. These threadbare and conclusory allegations are insufficient to establish liability for excessive force or negligence as to Williams. Count One will be dismissed as to Williams.

    ii.    *Qualified Immunity*

Reed asserts that he is entitled to qualified immunity. Dkt. 8 at 11. Qualified immunity is a tool meant to shield government officials from civil liability so long as their conduct does not violate clearly established constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendants may raise the qualified immunity defense at both the motion to dismiss and

---

[6] Defendants do not analyze the *Graham* factors but instead attempt to apply factors set forth in *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015). Both *Graham* and *Kingsley* address excessive force claims, but *Graham* applies to citizens being seized or arrested while *Kingsley* concerns pretrial detainees. *Graham* is therefore the more instructive case in this instance.

motion for summary judgment stages of litigation. *Behrens v. Pelletier*, 516 U.S. 299 (1996). While the defense can be presented at the motion to dismiss stage, "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009). Without precise facts, determining if a reasonable officer would have known that he was violating a constitutional right is difficult. *B.R. v. F.C.S.B.*, No. 1:19-CV-917, 2023 WL 2464975, at *21 (E.D. Va. Mar. 10, 2023) (citing *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)). Consequently, a defendant raising a qualified immunity defense at this early stage in the proceedings "faces a formidable hurdle" and "is usually not successful" because a plaintiff must only show a plausible claim. *Owens*, 767 F.3d at 396 (citation omitted). Thus, courts often defer the question of qualified immunity until a later stage in the proceedings. *See Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) (denying a motion to dismiss without prejudice as to the question of qualified immunity until there is a more developed record when a plaintiff has sufficiently alleged a constitutional violation); *Smith v. Parker,* No. 7:19-CV-00410, 2020 WL 2840160, at **10-11 (W.D. Va. June 1, 2020) (same); *see also Cooper v. Nichols*, No. 1:17-CV-1466, 2019 WL 418856, at *4 (E.D. Va. Feb. 1, 2019) (same).

Evans has alleged that Reed, without warning, allowed his police dog to attack, bite and maul Evans, and that Reed knocked him unconscious when he posed no threat. Dkt. 1 ¶ 54. Excessive force by police is a clearly established violation of a Fourth Amendment right. *Graham*, 490 U.S. 397-97; *Turmon v. Jordan*, 405 F.3d 202, 208 (4th Cir. 2005). Specifically, an officer's "failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context." *Vathekan,* 154 F.3d at 179 (quoting *Kopf*, 942 F.2d at 266). The facts are unclear as to whether Officer Reed gave a warning before releasing the dog. This is one of many facts that need to be developed before determining whether Reed is entitled to qualified

immunity at a later stage of litigation. At this point, taking plaintiff's allegations as true, Evans has sufficiently alleged that Reed engaged in conduct that violated clearly established constitutional rights such that he would not be entitled to qualified immunity.

### B. Count Two: Evans has Waived His Claim for Bystander Liability against Officer Williams

Williams argues that Evans' allegations regarding bystander liability are conclusory and insufficient to state a claim for bystander liability. Dkt. 8 at 16. Again, Evans wholly failed to respond to Williams' arguments and therefore is deemed to have abandoned this claim. Count Two will therefore be dismissed.

### C. Count Three: Evans Fails to State a Claim for Conspiracy Against Officers Reed and Williams

A plaintiff faces "a weighty burden to establish a civil rights conspiracy." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). In order to establish a conspiracy under 42 U.S.C. § 1985[7], a plaintiff must show: 1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 346 (4th Circ. 2011) (citing *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995). Moreover, the plaintiff must show an agreement or a meeting of the minds by the defendants to violate the plaintiff's constitutional rights. *Id.* Evans' allegations do not suffice and Defendants' Motion to Dismiss Count Three will be granted.[8]

---

[7] Although Count Three refers to 42 U.S.C. § 1985, the Court questions whether Evans intended to cite 42 U.S.C. § 1983. Defendants responded to Count Three as if it were a claim under § 1985, so will the Court as well.
[8] Additionally, the intra-corporate conspiracy doctrine which provides that "employees, when acting in the scope of their employment, cannot conspire among themselves" may bar Evans' conspiracy claim. *Roberts v. Ballard*, 2017

    **D. Counts Nine and Ten: Evans Sufficiently Alleges State Law Claims for Assault and Battery and Gross, Willful, Wanton and Reckless Negligence against Officer Reed but not against Officer Williams.**

Evans raises two additional state law claims against the Officers: Assault and Battery (Count Nine) and Gross, Willful, Wanton and Reckless Negligence (Count Ten). Dkt. 1 ¶¶ 109-134. Officers can be liable for state law claims when a constitutional violation such as excessive force exists. *See Burruss v. Riley*, 192 F. Supp. 3d 655, 666 (W.D. Va. 2016). Here, as is often the case, Evans' state law claims rise or fall with his excessive force claims. *See Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-CV-00055, 2016 WL 7235836, at *7 (W.D. Va. Dec. 13, 2016) (collecting authority and finding that state law claims rise or fall with the excessive force claim); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *see also Calloway v. Lokey*, 948 F.3d 194, 205 (4th Cir. 2020) (affirming lower court's dismissal of state law claims when Fourth Amendment claim failed). Accordingly, the Motion to Dismiss Counts Nine and Ten as to Reed will be denied and granted as to Williams.

Conclusion

    For the foregoing reasons, the Court will take the following actions in an accompanying order:

Count One Excessive Force: Defendants' Motion to Dismiss will be **denied** as to Reed and **granted** as to Williams;

Count Two Bystander Liability: Defendants' Motion to Dismiss will be **granted**;

---

U.S. Dist. LEXIS 31858, *13 (S.D. W. Va. Mar. 7, 2017) (citing *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000)); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 224 (4th Cir. 2004). In *Veney v. Ojeda*, a court dismissed a conspiracy claim against two police officers after a plaintiff alleged that the officers conspired to violate his Fourth Amendment rights. *Veney v. Ojeda*, 321 F. Supp. 2d, 733, 735 (E.D. Va. 2004). The court held that the officers were agents of the police department "and thus cannot legally conspire with one another." *Id.* at 748. *See also Cottom v. Town of Seven Devils*, 2001 U.S. Dist. LEXIS 9098, *18 (W.D. N.C. 2001). The court need not determine whether either of the two exceptions to the intra-corporate conspiracy doctrine apply, (agents performing unauthorized acts in furtherance of a conspiracy and defendants with independent personal stakes in achieving the illegal objective) because Evans does not adequately plead a conspiracy among the Defendant Officers.

Count Three Conspiracy: Defendants' Motion to Dismiss will be **granted**;

Count Four Unconstitutional Custom or Practice: Defendants' Motion to Dismiss will be **granted**;

Count Five Failure to Train: Defendants' Motion to Dismiss will be **granted;**

Count Six Failure to Discipline: Defendants' Motion to Dismiss will be **granted**;

Count Seven Ratification: Defendants' Motion to Dismiss will be **granted**;

Count Nine Assault and Battery: Defendants' Motion to Dismiss will be **denied** as to Reed and **granted** as to Williams;

Count Ten: Gross Negligence: Defendants' Motion to Dismiss will be **denied** as to Reed and **granted** as to Williams.

    The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

    Entered this  5th  day of February, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE