CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/19/2025

LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| HERMAN TRACY EVANS,<br><br>                              *Plaintiff*,<br>v.<br><br>THE CITY OF LYNCHBURG, ET AL.,<br><br>                              *Defendants*. | CASE NO. 6:24-CV-00019<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Herman Tracy Evans ("Evans") is suing the City of Lynchburg (the "City") for four violations of 42 U.S.C. § 1983 arising out of an incident between Evans and Police Officer Seth Reed ("Officer Reed"). The Court previously dismissed all claims against the City of Lynchburg because Evans abandoned those claims by failing to address the City's motion to dismiss. Dkts. 19 and 20. The Court allowed Evans to amend his complaint, Dkt. 28, and he restated four § 1983 claims against the City. Dkt. 30. The City moved to dismiss those amended claims, Dkt. 32, and Evans again failed to respond. Despite Evans' seeming disinterest in advancing his own case, the Court has independently assessed the merits of the City's motion to dismiss. Based on that assessment, the City's motion will be granted in part and denied in part.

**I.  Background**

Officer Reed responded to a dispatch call for disorderly conduct at Evans' home. Dkt. 30 ¶ 9 (Am. Compl.). When Officer Reed arrived, Evans opened his front door, said he was "fine," and demanded that Officer Reed leave. *Id.* ¶¶ 11–12. Officer Reed instructed Evans to remain in the house or he would be arrested. *Id.* ¶ 13. He opened his door several times to tell Officer Reed

Case 6:24-cv-00019-NKM-CKM    Document 39    Filed 12/19/25    Page 2 of 10
Pageid#: 320

to leave. *Id.* ¶¶ 14–16. Officer Reed told Evans that if he opened the door again, he would be arrested. *Id.* ¶ 17. Evans yelled "f**k you." *Id.* ¶ 18. Officer Reed approached Evans' front door with a police dog named "Knox." *Id.* ¶¶ 9, 17–18. He told Evans he was under arrest and instructed him to come outside. *Id.* ¶¶ 18–19. Evans refused and Officer Reed warned, "if you don't come out, I'm going to have to do what I have to do." *Id.* ¶ 19. He again refused. *Id.* ¶ 20. Officer Reed then kicked down Evans' door and ordered Knox to attack. *Id.* Knox bit Evans on his upper thigh and buttocks. *Id.* ¶ 23. Officer Reed then punched Evans knocking him unconscious. *Id.* ¶ 25.

The Lynchburg Police Department ("LPD") policy in effect at the time of this incident stated that use of a canine could be an application of deadly force and should only be used when there was a threat a physical violence. *Id.* ¶¶ 28–29. Evans concedes LPD's policies are "facially constitutional," but asserts these policies are routinely ignored in practice. *Id.* ¶ 48. Evans offers fifteen examples of what he believes to be the LPD's custom or practice of using excessive force in violation of LPD's official policies. *Id.* ¶¶ 51(a)–(o). For example, Evans alleges another individual named Craig Morris was pepper sprayed and struck several times by LPD officers for using the term "f**k" in public. *Id.* ¶ 51(a). He also alleges that canines were employed against three other Lynchburg citizens who were not posing an imminent threat of physical harm to LPD officers or any member of the public. *Id.* ¶¶ 51(c), (f), (i).

Evans claims the City does not require annual excessive force training for LPD officers. *Id.* ¶ 60. Officer Reed was not disciplined or counseled regarding the incident with Evans. *Id.* ¶ 64. The City is the final authority for hiring, disciplining, and firing LPD officers. *Id.* ¶ 61.

## II.     Legal Standards

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint and does not resolve contests surrounding the facts, the merits, or the applicability of defenses. *See, e.g.*, *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). In ruling on a motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *King*, 825 F.3d at 212.

## III.    Discussion

The Court previously dismissed Evans' claims against the City because he responded to Reed's arguments for dismissal, but not the City's. Dkt. 19. The Court viewed this as a constructive abandonment of his claims against the City. Dkt. 19. However, Evans restated his claims against the City in his Amended Complaint. Dkt. 30. These claims include alleged violations of § 1983 for: (1) maintaining an unconstitutional custom of using excessive force against its residents through the unreasonable use of police dogs (Count 2); (2) failing to train its officers in the constitutional limits of the use of police dogs (Count 3); (3) failing to discipline officers who used unreasonable and excessive force (Count 4); and (4) ratifying unconstitutional and excessive uses of force (Count 5). Dkt. 30.

The City moved to dismiss his claims for a second time, Dkts. 32 and 33, and Evans again failed to address the City's arguments for dismissal. This time, though, he has been completely silent.[1]

---

[1]     Before, Evans responded to some arguments for dismissal and ignored others. Having voiced opposition to some arguments for dismissal and not others, the Court viewed his silence as to some claims as an abandonment of those claims.

3

A plaintiff's total failure to respond to a motion to dismiss is not an independent basis to grant dismissal. Instead, district courts must "review a defendant's motion to dismiss and ensure that dismissal is appropriate even where [] a plaintiff fails to respond to the motion."[2] *Goudy v. Navy Fed. Credit Union Found.*, No. 23-1721, 2024 WL 2206508, at *1 (4th Cir. May 16, 2024) (citing *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 (4th Cir. 2014)). Therefore, the Court will assess the viability of Evans' claims despite his failure to offer any argument in support of those claims.

### A. Illegal Custom or Practice of Allowing Officers to Use Excessive Force

42 U.S.C. § 1983 authorizes civil suits by individuals who have been deprived of federal statutory or constitutional rights by government officials acting under color of state law. These claims against local governments—also known as "*Monell* claims"—arise under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest [s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute

---

[2] Many district courts in this circuit continue to treat a plaintiff's failure to respond to a motion to dismiss as a procedural default. *E.g.*, *Perkins v. Univ. of Maryland, Baltimore Sch. of Nursing*, 2025 WL 1371486, at *4 (D. Md. May 12, 2025); *Moore v. Nat'l Collegiate Athletic Ass'n*, 2022 WL 2306761, at *2 (E.D. Va. June 27, 2022); *Martin v. Comer*, 2022 WL 3443702, at *4 (E.D.N.C. Aug. 3, 2022). This makes some sense given the requirement that plaintiffs diligently prosecute their cases. *See* Fed. R. Civ. P. 41(b). Nevertheless, this Court is required to follow the Fourth Circuit's mandate in *Stevenson*, 743 F.3d at 416, that district courts review a complaint for legal sufficiency even when plaintiffs fail to respond to motions to dismiss.

a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

The municipality's policy or custom must be the "moving force" behind the violation, meaning that a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). Vicarious liability or *respondeat superior* cannot provide the theory of liability; instead, a *Monell* claim must be based on the municipality's actions (*i.e.*, its policies or customs) rather than just those of its employees. *Id.*

At this motion to dismiss stage, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.* Thus, while "prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Id.*

Here, Evans alleges the City has a custom of violating citizens' constitutional rights by permitting the use of excessive force. Dkt. 30. His claims specifically pertain to the use of police dogs against citizens who are not threatening physical violence, as well as the use of excessive physical violence by LPD officers. *Id.* This Court recently addressed *identical* claims by a different plaintiff against the City and Officer Reed. *See Wesley v. City of Lynchburg*, 2025 WL 1679641, at *5 (W.D. Va. June 13, 2025). In *Wesley*, the Court found that plaintiff had sufficiently pleaded that the City had a custom of condoning the unconstitutional use of police canines. *Id.* at *6 (citing *Owens*, 767 F.3d at 402). Specifically, the City had this custom of condonation because "municipal policymakers fail[ed] 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Id.* The Court concluded that Wesley's fifteen examples of alleged excessive force by the LPD—including three alleged incidents involving police canine—were

5

adequate to plead a "persistent and widespread practice" of condoning the deprivation of citizens' constitutional rights. *Id.* at *5–6. Evans cites the exact same fifteen examples in his Amended Complaint. Dkt. 30 ¶¶ 51(a)–(o).

Given the modest burden a plaintiff faces when pleading a *Monell* claim, the Court sees no reason to deviate from *Wesley's* holding in this identical case. Accordingly, Count 2 survives the City's motion to dismiss.[3]

### B. Failure to Train

In Count 3, Evans alleges that the City has a facially constitutional policy of limiting the use of police dogs to situations in which an individual poses a physical threat or when violence is imminent, Dkt. 30 ¶ 86; however, the City failed to adequately train its officers to comply with that policy. *Id.* ¶¶ 96–107.

The Supreme Court has acknowledged that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For liability to arise, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To be deliberately indifferent, municipal policymakers must have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Id.* Training deficiencies can include

---

[3] Whether Evans can proffer disputed facts to survive summary judgment on his *Monell* liability claim is an entirely different question. The City filed a motion indicating that although the deadline to complete discovery has expired, the parties have conducted no discovery on Evans' *Monell* liability claim. Dkt. 35 ¶ 5.

"express authorizations" of unconstitutional conduct, "tacit authorizations," and "failures [] to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." *Spell*, 824 F.2d at 1390. A failure to provide proper training can render a city liable "if it actually causes injury." *Harris*, 489 U.S. at 390; *see also Estate of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 671-72 (4th Cir. 2020) (discussing causation requirement); *Spell*, 824 F.2d at 1390 (same).

Like the plaintiff in the *Wesley* case, Evans alleges that a specific training deficiency—a failure to train officers on the constitutional limits of handling and deploying police canines—caused his injuries by an LPD police dog. *See* Dkt. 30 ¶¶ 96–107; *see also Wesley*, 2025 WL 1679641, at *7. Evans alleges that the City knew about prior misuses of police canines and did nothing to adjust its training. *Id.* As in *Wesley*, this allegation is sufficient to plead a *Monell* claim for failure to train at the motion to dismiss stage. A municipality cannot know about repeated constitutional violations and put its head in the sand—it must take affirmative steps to train its employees to avoid unconstitutional interactions with the public. Accordingly, Count 3 survives the City's motion to dismiss.

### C. Failure to Discipline

Evans also alleges that the LPD fails to discipline its officers who use excessive force, including failing to discipline Officer Reed for the incident involving Evans. *See* Dkt. 30 ¶ 109 ("LPD routinely fails to discipline its officers when they use objectively unreasonable and excessive force."). He argues this failure to discipline caused his injuries. *Id.* ¶ 110-12 (the City's "deliberately indifferent failure to discipline its officers who used excessive force was a moving force behind [his] injuries."

"A failure to discipline claim requires a plaintiff to prove a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Baker v. Stover*, 2024 WL 4122036, at *8 (E.D. Va. Sep. 6, 2024) (quoting *Owens*, 767 F.2d at 402). There must also be a "sufficiently close causal link" between uncorrected misconduct and the specific violation at issue. *Spell*, 824 F.2d at 1391.

Here, as in *Wesley*, Evans makes no attempt to show how the City's alleged failure to discipline officers caused his injury. 2025 WL 1679641, at *8. The only specific instance he mentions is the LPD's failure to discipline Officer Reed for the allegedly unconstitutional force used against Evans. Dkt. 30 ¶ 110. However, the City's failure to discipline Officer Reed for his use of force against Evans obviously could not have caused the constitutional violation against Evans because that discipline would have necessarily post-dated the unconstitutional acts. Moreover, a single or sporadic incidents of failure to discipline do not establish *Monell* liability. *E.g.*, *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993) ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*.").

Beyond this allegation relating to a lack of *post-hoc* discipline for Officer Reed, Evans relies on conclusory statements and formulaic recitations of the elements of the cause of action. This is not enough to state a claim for relief. *See Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018) (A court need not accept as true "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments." (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted)). Because Evans failed to show

8

how the City's alleged failure to discipline its officers caused his injuries, the City's motion to dismiss is granted as to Count 4.

### D. Ratification of Officer's Illegal Actions

Evans alleges that the LPD's chief—described as the "ultimate and final policymaker for the Lynchburg Police Department"—conducted reviews of the use of force against him. Dkt. 30 at ¶¶ 120–122. The chief "concluded that [Officer Reed] acted within LPD policies, despite the fact that [Evans] posed no threat to anyone at any time." *Id.* ¶ 122. Evans alleges the chief's decision contradicted the LPD's use of force policy which "clearly state[s] that the use of a canine was prohibited when no physical threat or violence appeared imminent." *Id.* ¶ 29.

The chief's conclusion that Officer Reed acted lawfully after the fact could not "ratify" or "approve" Officer Reed's allegedly unlawful actions before they occurred. Because the municipal ratification must cause the alleged violation of the plaintiff's constitutional rights, a plaintiff cannot pursue a § 1983 claim against a municipality based on the municipal official's after-the-fact approval of a police action. *See Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023) ("The city manager's *post-facto* approval of an internal shooting investigation cannot possibly have caused the constitutional violation. Reversing the City Manager's decision cannot undo what is done.")

Here, as in *Wesley*, Evans brings the kind of ratification claim that *Franklin* forbids. 2025 WL 1679641, at *8. The chief's determination that Officer Reed did not violate Evans' rights could not have changed the type of force used against Evans.[4] Accordingly, the City's motion to dismiss must be granted as to Count 5.

---

[4] If Evans had alleged that before his incident with Officer Reed, the chief had ratified Officer Reed unlawfully deploying a police canine against another citizen by failing to discipline him, he may have stated a failure to discipline claim. Alternatively, it *may* have been sufficient for

9

IV.     Conclusion

For the foregoing reasons, the City's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**.  An accompanying Order will be issued on this date.

Entered this 19th day of December, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

Evans to allege that the chief's failure to discipline officers who misused police canines in the past created a culture (or unofficial policy) that emboldened officers—including Officer Reed—to use police canines in an unconstitutional manner.  But no such allegations are present in the Amended Complaint.  Evans' allegation that LPD "routinely fails to discipline its officers when they use objectively unreasonable and excessive force" is both conclusory and untethered to any of the 15 specific examples of excessive force articulated earlier in the Amended Complaint. Dkt. 30 ¶ 109.

10